**DEREK SMITH LAW GROUP, PLLC**
701 Brickell Ave, Suite 1310
Miami, Florida 33131
Tel: (305) 786-1884
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DAWN JACKSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:23-cv-22574 |
| v. | : | |
| | : | |
| THE DISTRICT BOARD OF TRUSTEES | : | **Plaintiff Demands a Trial by Jury** |
| OF MIAMI-DADE COLLEGE, | : | |
| FLORIDA, | : | |
| | : | |
| Defendant. | : | |

## FIRST AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, DAWN JACKSON, (hereinafter referred to as "Plaintiff" or "Ms. Jackson"), by and through Plaintiff's attorneys, DEREK SMITH LAW GROUP, PLLC, as and for Plaintiff's First Amended Complaint in this action against the Defendant THE DISTRICT BOARD OF TRUSTEES OF MIAMI DADE COLLEGE, FLORIDA[1] (hereinafter referred to as "Defendant" and/or "MDC"), upon both information and belief, alleges as follows:

## JURISDICTION AND VENUE

1.      At its core, this case is about a disabled woman, who while providing care for her ailing father on hospice care and simultaneously seeking medical treatment relating to her possible cancer diagnosis, was mistreated by her employer, and unlawfully terminated.

---

[1] Pursuant to Defendant MDC's Motion to Dismiss (D.E. 8), the proper spelling of Defendant's name is without a hyphen. To the extent necessary, Plaintiff is agreeable to stipulating to the proper spelling in this caption.

2.     Plaintiff Jackson brings this action pursuant to 29 U.S.C. § 2612 ("**FMLA**"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*  ("**ADA/ADAAA**"), the Rehabilitation Act of 1973 29 U.S.C. 794, § 504(d) ("**Rehabilitation Act**"), 42 U.S.C. §§ 12101 ("**Section 1983**"), and the Miami-Dade Code of Ordinances 97-17, Article IV, Chapter 11A, *et seq.* ("**MDCO**"), to redress the Defendants' unlawful employment practices in violation of the above Federal, State, and local statutes.

3.     Plaintiff Jackson brings this is an action for monetary damages and all other appropriate relief as deemed appropriate by the court, for disability discrimination, failure to accommodate Plaintiff's disability, interference with Plaintiff's rights pursuant to the FMLA, and retaliation pursuant to Federal, Florida State, and local law and hereby seeks monetary relief to redress Defendant MDC's unlawful conduct.

## JURISDICTION AND VENUE

4.     This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to the varying Federal, State, and City/Country laws.

5.     The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3), 42 U.S.C. §2000e-5(f)(3), and §1367.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391. In accordance with the Federal Rules of Civil Procedure, venue is proper in this district based upon the fact that Defendant MDC's unlawful actions occurred within the Southern District of Florida. Furthermore, Defendant MDC was and still is believed to be located in this judicial district. In sum, a substantial part of the events or omissions giving rise to this action, including the unlawful conduct herein occurred in this district.

## PARTIES

7.     Plaintiff, Dawn Jackson (hereinafter also referred to as Plaintiff and "Ms. Jackson") is an individual disabled female, and resident of Broward County within the State of Florida.

8.     At all times material, Defendant THE DISTRICT BOARD OF TRUSTEES OF MIAMI-DADE COLLEGE, FLORIDA (hereinafter referred to as "Defendant" and/or "MDC") is a member of the Florida state community college system which operates a state supported college in Mimi-Dade County, Florida.

9.     Defendant MDC an "employer" within the meaning of the ADA/ADAAA, FMLA, and MDCO.

10.     Defendant MDC is a "Public Entity" within the meaning of Title II of the Americans with Disabilities Act and, at all times relevant, was and continues to be the recipient of federal financial assistance under the Rehabilitation Act of 1973.

11.     At all relevant times, Defendant MDC has been continuously doing business in the State of Florida and Miami-Dade County and has continuously held at least 15 employees for all relevant calendar years.

12.     At all times material, Defendant MDC was Ms. Jackson's employer.

## ADMINISTRATIVE EXHAUSTION

13.     Plaintiff Jackson has complied with all statutory prerequisites to file this action.

14.     On or about September 1, 2021, the Plaintiff dual-filed his charge for discrimination with the Equal Employment Opportunity Commission ("**EEOC**"), the Florida Commission on Human Relations ("**FCHR**"), and the Miami Dade County Commission on

Human Rights ("**MDCCHR**") against Defendant MDC alleging the facts as set forth herein (Charge No. 510-2021-06336).

15.     On or about April 28, 2023, the EEOC issued the Plaintiff a Right to Sue Letter.

16.     Plaintiff Jackson commenced this action within ninety (90) days of receipt of the EEOC Right to Sue Letter.

17.     Furthermore, the herein action was commenced more than one hundred eighty (180) days since the inception of Plaintiff Jackson's admirative action against the Defendant MDC. To date no determination has been made by the FCHR nor the MDCCHR relating to the herein complaint.

## FACTUAL BACKGROUND COMMON TO ALL CAUSES OF ACTION

18.     On or around April 18, 2016, Defendant MDC hired Plaintiff Jackson into the position of a "Part-Time Academic and Career Advisor" within the Defendant's Testing and Assessment Department, West Campus.

19.     At all times material, Plaintiff reported to Mayte Pino (hereinafter "Ms. Pino") (Hispanic/Female), Defendant MDC's "Director" within the Defendant's Testing and Assessment Department, West Campus.

20.     At all times material hereto, Ms. Pino, as Plaintiff's Director and manager, asserted supervisory authority over Plaintiff and had operational control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand Plaintiff.

21.     In or around the spring of 2020, as a result of the global Covid-19 Pandemic ("the Pandemic"), and associated county, state, and federal restrictions, Defendant MDC instructed its' employee to begin working remotely.

22.     At all times pertinent hereto, Plaintiff's father was suffering from and ultimately succumbed to prostate cancer.

23.     Prior to the pandemic, Plaintiff Jackson was responsible for the health and general caretaking of her elderly father. In fact, Plaintiff was transparent with Ms. Pino about her struggles as his caretaker, requesting time off/schedule adjustments so that she can attend doctors' appointments and other related activities associated with his care.

24.     Throughout the course of the Pandemic, Ms. Jackson continued to struggle with the increased career needs of her father, including home-hospice care.

25.     Despite the above, Defendant MDC knowingly permitted Plaintiff Jackson to work remotely without substantial interference to the Defendant and/or Defendant's students.

26.     On or around April 12, 2021, Ms. Pino emailed Plaintiff Jackson, on behalf of the university, advising her that effective Monday, April 26, 2021, Plaintiff Jackson was required to return to work in-person.

27.     Upon receipt of this email notice, Plaintiff became overwhelmed. Plaintiff found the timeline to return to the office as sudden and one that would require her to make arrangements that may take longer than the two-week period Defendant MDC was allotting their employees before returning to the office.

28.     Furthermore, Plaintiff herself was being tested as a result of her own personal health. As Plaintiff advised Ms. Pino that she had a concerning colonoscopy and was being evaluated by an oncologist as they feared she may have a malignant tumor (cancer).

29.     Plaintiff Jackson had been sent by her physician to conduct an exploratory colonoscopy after noticing blood in her stool and ongoing anemia.

30.     In what became a further calamity of issues, the night before her return to work, Plaintiff's son who had been out of town travelling with friends, informed her that one of the people he had been with had tested positive for Covid-19.

31.     Putting aside the concerns relating to the impact Covid-19 may have on her underlying health issues, Plaintiff contacted Defendant to advise she was awaiting her son's test results to insure he didn't have the virus, let alone pass it along to anyone with whom she worked or have her catch the virus.

32.     On or around April 26, 2021, Plaintiff emailed Ms. Pino advising of her family's health status.

33.     Plaintiff requested to have her remote work period extended so that she could care for her father, whom Plaintiff feared would pass away shortly, as well as ensure sufficient time to determine the status of her own health and any treatment plan(s). She expressly requested an additional 30-45 days of remote work, in accordance with the suggestion of her doctor(s).

34.     Plaintiff Jackson assured Ms. Pino she was able to continue performing her work with the assistance of an accommodation, despite the seasonal increased demands, as the prior year of working remote had demonstrated her efficacy in doing such, even under the constantly changing and shifting climate.

35.     In fact, Plaintiff offered to provide Defendant with any necessary medical documentation they felt necessary in order to approve her request. No follow-up request was made by Ms. Jackson.

36.     On or about April 27, 2021, Plaintiff sent Ms. Pino a message via Defendant MDC's "MS Teams app" to follow up on her unanswered email from the night before. Once again, Plaintiff's communication went unanswered.

37.     Despite the Defendant's lack of communication, Plaintiff voluntarily submitted a letter from her treating physician indicating that Plaintiff Jackson was under his care and that he recommended she work from home while in her condition.

38.     On or around April 30, 2021, Ms. Pino called Plaintiff and asked her if she would be returning to work in the office.

39.     Plaintiff again informed Ms. Pino that given her current medical condition, and on the advice of her physician, she could not yet return to work but would be more than capable of handling her work responsibilities remotely.

40.     Rather than advise Ms. Jackson of her rights under the FMLA or instruct her to contact Human Resources regarding formal disability accommodation, Ms. Pino instructed Plaintiff Jackson that she either return to work or resign.

41.     Plaintiff Jackson made it abundantly clear that she did not want to resign and that she was merely requesting temporary reasonable accommodation.

42.     On or about May 10, 2021, Defendant MDC sent Plaintiff Jackson a correspondence serving as "an acceptance" of Plaintiff's verbal resignation effective of April 30, 2021.

43.     Plaintiff Jackson was shocked. As noted above, she made it clear in no uncertain terms during her phone call with Ms. Pino on April 30, 2021, that she did not want to resign and was only asking for accommodation.

44.     Plaintiff Jackson never resigned from her position with Defendant MDC.

45.     Upon receipt of the Defendant's letter, Plaintiff Jackson contacted Defendant MDC's Human Resources Department and spoke with a Female Representative (name unknown at this time).

46.     Rather than engage in a meaningful dialogue regarding Ms. Jackson's request for a reasonable accommodation or discuss the possibility of Ms. Jackson taking FMLA leave, Mr. Guardado summarily told Plaintiff that if she was not going to come into the office then it was considered a verbal resignation.

47.     On or about May 10, 2021, Defendant MDC wrongfully and unlawfully terminated Plaintiff Jackson.

48.     Defendant unlawfully terminated Ms. Jackson because of her disability, and in retaliation for her request for reasonable accommodation.

49.     Furthermore, Defendant MDC discriminated against Plaintiff Jackson by failing to provide Ms. Jackson with reasonable accommodation.

50.     Further still, Defendant MDC violated Plaintiff's federally protected rights by interfering with her ability to take FMLA leave, necessary to ensure the continued treatment and support of her ailing father.

51.     The above are just some examples of some of the unlawful conduct and comments to which Defendant MDC subjected Plaintiff Jackson.

52.     As a result of Defendant MDC's unlawful conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries, in addition to emotional distress.

53.     As a result of Defendant actions, Plaintiff felt and continues to feel humiliated, degraded, victimized, and embarrassed. Plaintiff is a strong and independent person but, as a result of the events above, wholly second guesses every decision she makes.

54.     As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary and reputational losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT ONE
### ADA/ADAAA, Sec. 12112
### Failure to Accommodate (Disability)

55.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

56.     Article I of the ADA/ADAAA prohibits employers from denying an individual's reasonable accommodations for a disability.

57.     42 U.S.C. §12112(a) provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

58.     Further, 42 U.S.C. §12112(b)(5)(A) provides that " not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."

59.     At all times relevant, Plaintiff was "disabled" as defined under the law. Ms. Jackson was suffering from unexplained bleeding in her stool and anemia. As a result, Ms. Jackson was under the ongoing treatment of her physicians, including but not limited to the evaluation of potential cancer risks.

60.     As a result of her disability, Plaintiff was substantially limited in regards to major life functions as well as major bodily functions, including but not limited to digestive and bowl function.

61.     Defendant discriminated against Plaintiff because of her disability by denying her accommodation requests.

62.     On or around April 26, 2021, after being made aware of the Defendant's decision to have staff return to the office in-person, Ms. Jackson advised the Defendant, through her supervisor Mr. Pino, that she was both the care giver for her terminally ill father, as well as undergoing medical evaluation relating to a concerning colonoscopy.

63.     On or around April 27, 2021, Ms. Jackson again contacted Mr. Pino, having received no response or further guidance. Plaintiff Jackson explained she was suffering from anemia and ongoing nausea. Given her diagnosis and the ongoing evaluation to determine the severity of her disability, Ms. Jackson requested she be permitted as an exception to continue working remotely.

64.     Plaintiff expressed in no uncertain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

65.     On or around that same day, Plaintiff submitted to Defendant MDC documentation, signed by her physician, reflecting that she has been under medical care and requires a procedure on Thursday, September 6, 2021.

66.     Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests to continue working remote, as well as through the request submitted by her then treating physician.

67.     Defendant, by and through its employees, failed to respond to Plaintiff's requests for reasonable accommodation.

68.     Instead, on around April 30, 2021, Mr. Pino contacted Ms. Jackson to inquire whether she would be returning to the office. At no time during this call did Mr. Pino indicate that the Defendant MDC had finished its evaluation of Ms. Jackson's accommodating request, denied her accommodation request, and/or that failure to return to the office would be constituted as a resignation.

69.     Defendant MDC failed to engage in any, let alone a meaningful conversation regarding reasonable accommodation.

70.     Defendant would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

71.     At all times relevant, Defendant, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide reasonable accommodation or participate in the interactive process.

72.     Instead, on or around May 10, 2021, Defendant unlawfully terminated Plaintiff because of her disability.

73.     The conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under the ADA.

74.     Plaintiff has been damaged by Defendant's illegal conduct.

75.     As a result of Defendant's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff

has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

76.     At all times relevant, Defendant MDC, by and through its employees and agents, acted intentionally and with reckless disregard of Ms. Jackson's rights protected by Article I of the ADA/ADAAA.

77.     Plaintiff accordingly demands injunctive relief and any such other relief as the Court deems just and proper.

78.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by Article I, of the ADA/ADAAA.

<u>**COUNT TWO**</u>
**ADA/ADAAA, Sec. 12203(a)**
**Retaliation**

79.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80.     Article I of the ADA/ADAAA prohibits employers from retaliating against any individual whom makes a reasonable request for an accommodations for a disability.

81.     SEC. 12203 states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

82.     At all times relevant, Defendant MDC employees intended to unlawfully discriminate against Ms. Jackson in their terms and conditions of her employment in violation of the ADA because she requested an accommodation and subsequently opposed a practice made unlawful by the ADA.

83.     On or around April 26, 2021, after being made aware of the Defendant's decision to have staff return to the office in-person, Ms. Jackson advised the Defendant, through her supervisor Mr. Pino, that she was both the care giver for her terminally ill father, as well as undergoing medical evaluation relating to a concerning colonoscopy.

84.     On or around April 27, 2021, Ms. Jackson again contacted Mr. Pino, having received no response or further guidance. Plaintiff Jackson explained she was suffering from anemia and ongoing nausea. Given her diagnosis and the ongoing evaluation to determine the severity of her disability, Ms. Jackson requested she be permitted as an exception to continue working remotely.

85.     Plaintiff expressed in no uncertain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

86.     On or around that same day, Plaintiff submitted to Defendant MDC documentation, signed by her physician, reflecting that she has been under medical care and requires a procedure on Thursday, September 6, 2021.

87.     Plaintiff participated in a protected activity when she requested and repeatedly renewed her request for a reasonable accommodation despite receiving no response or update. *Ponce v. City of Naples*, No. 2:17-CV-137-FTM-99CM, 2017 WL 2692829 (M.D. Fla. June 22, 2017); *Vargas v. Fla. Crystals Corp.,* No. 16-81399-CIV, 2019 WL 8955114 (S.D. Fla. May 13, 2019); *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000).

88.     Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests to continue working remote, as well as through the request submitted by her then treating physician.

89.     Defendant, by and through its employees, failed to respond to Plaintiff's requests for reasonable accommodation.

90.     Instead, on around April 30, 2021, Mr. Pino contacted Ms. Jackson to inquire whether she would be returning to the office. At no time during this call did Mr. Pino indicate that the Defendant MDC had finished its evaluation of Ms. Jackson's accommodating request, denied her accommodation request, and/or that failure to return to the office would be constituted as a resignation.

91.     Defendant MDC failed to engage in any, let alone a meaningful conversation regarding reasonable accommodation.

92.     Instead, On or around May 10, 2021, Defendant unlawfully terminated Plaintiff in retaliation for her request for reasonable accommodation.

93.     And, as a result, Defendant MDC unlawfully retaliated against Ms. Jackson because of that opposition.

94.     At all times relevant, Ms. Jackson acted in good faith and with the objective and subjective belief that violations of the ADA by Defendant MDC's employees had occurred.

95.     At all times relevant, the unlawful discrimination by Defendant MDC's employees against Ms. Jackson in the terms and conditions of her employment because she opposed a practice made unlawful by the ADA which would not have occurred but for that opposition.

96.     At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant MDC.

97.     The conduct of Defendant MDC and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

98.     Plaintiff has been damaged by the illegal conduct of Defendant MDC.

99.     As a direct and proximate result of Defendant MDC's intentional retaliatory conduct in violation of Article I of the ADA/ADAAA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

100.    At all times relevant, Defendant MDC, by and through its employees and agents, acted intentionally and with reckless disregard of Ms. Jackson's rights protected by Article I of the ADA/ADAAA.

101.    Plaintiff accordingly demands injunctive relief and any such other relief as the Court deems just and proper.

102.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by Article I, of the ADA/ADAAA.

**COUNT THREE**
**ADA/ADAAA, Sec. 12132**
**Failure to Accommodate (Disability)**

103.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104.    Article II of the ADA prohibits  public entities  from  denying  an  individual's reasonable accommodations for a disability.

105.    42 U.S.C. §12132 provides that "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

106.    In order to prevail on a claim pursuant to Article II, plaintiff must establish that "that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami–Dade Cnty.,* 480 F.3d 1072, 1083 (11th Cir.2007); *see also Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir.2000)

107.    Defendant discriminated against Plaintiff because of her disability by denying her accommodation requests.

108.    Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests to continue working remote, as well as through the request submitted by her then treating physician.

109.    At all times relevant, Plaintiff was "disabled" as defined under the law. Ms. Jackson was suffering from unexplained bleeding in her stool and anemia. As a result, Ms. Jackson was under the ongoing treatment of her physicians, including but not limited to the evaluation of potential cancer risks.

110.    As a result of her disability, Plaintiff was substantially limited in regards to major life functions as well as major bodily functions, including but not limited to digestive and bowl function.

111.    Defendant discriminated against Plaintiff because of her disability by denying her accommodation requests.

112.    On or around April 26, 2021, after being made aware of the Defendant's decision to have staff return to the office in-person, Ms. Jackson advised the Defendant, through her supervisor Mr. Pino, that she was both the care giver for her terminally ill father, as well as undergoing medical evaluation relating to a concerning colonoscopy.

113.    On or around April 27, 2021, Ms. Jackson again contacted Mr. Pino, having received no response or further guidance. Plaintiff Jackson explained she was suffering from anemia and ongoing nausea. Given her diagnosis and the ongoing evaluation to determine the severity of her disability, Ms. Jackson requested she be permitted as an exception to continue working remotely.

114.    Plaintiff expressed in no uncertain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

115.    On or around that same day, Plaintiff submitted to Defendant MDC documentation, signed by her physician, reflecting that she has been under medical care and requires a procedure on Thursday, September 6, 2021.

116.    Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests to continue working remote, as well as through the request submitted by her then treating physician.

117.    Defendant, by and through its employees, failed to respond to Plaintiff's requests for reasonable accommodation.

118.    Instead, on around April 30, 2021, Mr. Pino contacted Ms. Jackson to inquire whether she would be returning to the office. At no time during this call did Mr. Pino indicate that the Defendant MDC had finished its evaluation of Ms. Jackson's accommodating request,

denied her accommodation request, and/or that failure to return to the office would be constituted as a resignation.

119.    Defendant MDC failed to engage in any, let alone a meaningful conversation regarding reasonable accommodation.

120.    Defendant would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

121.    At all times relevant, Defendant, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide a reasonable accommodation or participate in the interactive process.

122.    Instead, on or around May 10, 2021, Defendant unlawfully terminated Plaintiff in retaliation for her request for reasonable accommodation.

123.    The conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under the ADA.

124.    Plaintiff has been damaged by Defendant's illegal conduct.

125.    As a result of Defendant's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

126.    At all times relevant, Defendant MDC, by and through its employees and agents, acted intentionally and with reckless disregard of Ms. Jackson's rights protected by Article II of the ADA.

127.    Plaintiff accordingly demands judgment against Defendant MDC in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

128.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by Article II of the ADA.

**<ins>COUNT FOUR</ins>**
**Section 504 of the Rehabilitation Act, 29 U.S.C. § 794**
**Failure to Accommodate (Disability)**

129.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

130.    Defendant MDC violated 29 U.S.C. 794 § 504(d) by failing to accommodate Plaintiff as a qualified individual with a disability.

131.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

132.    At all times relevant, Defendant MDC has been a recipient of federal financial assistance bringing Defendant MDC under Section 504 the Rehabilitation Act which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities."

133.    The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of State or local

government. Defendants are a state government and/or an agency of a state government. *29 U.S.C. § 794(b)(1)(A)*.

134.    At all times relevant, Defendant MDC employees intended to unlawfully discriminate against Ms. Jackson in their terms and conditions of her employment in violation of the Rehabilitation Act because she requested an accommodation and subsequently opposed a practice made unlawful by the Rehabilitation Act.

135.    At all times relevant, Plaintiff was "disabled" as defined under the law. Ms. Jackson was suffering from unexplained bleeding in her stool and anemia. As a result, Ms. Jackson was under the ongoing treatment of her physicians, including but not limited to the evaluation of potential cancer risks.

136.    As a result of her disability, Plaintiff was substantially limited in regards to major life functions as well as major bodily functions, including but not limited to digestive and bowl function.

137.    Defendant discriminated against Plaintiff because of her disability by denying her accommodation requests.

138.    On or around April 26, 2021, after being made aware of the Defendant's decision to have staff return to the office in-person, Ms. Jackson advised the Defendant, through her supervisor Mr. Pino, that she was both the care giver for her terminally ill father, as well as undergoing medical evaluation relating to a concerning colonoscopy.

139.    On or around April 27, 2021, Ms. Jackson again contacted Mr. Pino, having received no response or further guidance. Plaintiff Jackson explained she was suffering from anemia and ongoing nausea. Given her diagnosis and the ongoing evaluation to determine the

severity of her disability, Ms. Jackson requested she be permitted as an exception to continue working remotely.

140.    Plaintiff expressed in no uncertain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

141.    On or around that same day, Plaintiff submitted to Defendant MDC documentation, signed by her physician, reflecting that she has been under medical care and requires a procedure on Thursday, September 6, 2021.

142.    Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests to continue working remote, as well as through the request submitted by her then treating physician.

143.    Plaintiff participated in a protected activity when she requested a reasonable accommodation despite receiving no response or update. *Ponce v. City of Naples*, No. 2:17-CV-137-FTM-99CM, 2017 WL 2692829 (M.D. Fla. June 22, 2017); *Vargas v. Fla. Crystals Corp.*, No. 16-81399-CIV, 2019 WL 8955114 (S.D. Fla. May 13, 2019); *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000).

144.    Defendant, by and through its employees, failed to respond to Plaintiff's requests for reasonable accommodation.

145.    Instead, on around April 30, 2021, Mr. Pino contacted Ms. Jackson to inquire whether she would be returning to the office. At no time during this call did Mr. Pino indicate that the Defendant MDC had finished its evaluation of Ms. Jackson's accommodating request, denied her accommodation request, and/or that failure to return to the office would be constituted as a resignation.

146.     Defendant MDC failed to engage in any, let alone a meaningful conversation regarding her reasonable accommodation.

147.     Defendant would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

148.     At all times relevant, Defendant, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide reasonable accommodation or participate in the interactive process.

149.     Instead, on or around May 10, 2021, Defendant unlawfully terminated Plaintiff because of her disability.

150.     The conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under the Rehabilitation Act.

151.     Plaintiff has been damaged by the illegal conduct of Defendant MDC.

152.     As a direct and proximate result of Defendant MDC's intentional retaliatory conduct in violation of the Rehabilitation Act, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

153.     At all times relevant, Defendant MDC, by and through its employees and agents, acted intentionally and with reckless disregard of Ms. Jackson's rights protected pursuant to the Rehabilitation Act.

154.     Plaintiff accordingly demands judgment against Defendant MDC in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory

damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and

disbursements of action; and for such other relief as the Court deems just and proper.

155.    Plaintiff further requests that her attorney's fees and costs be awarded as

permitted by the Rehabilitation Act

**COUNT FIVE**
**Section 504 of the Rehabilitation Act, 29 U.S.C. § 794**
**Retaliation**

156.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

157.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

158.    Defendant MDC violated 29 U.S.C. 794 § 504(d) by retaliating against Plaintiff

for having requested a reasonable accommodation.

159.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United
> States, as defined in section 705(20) of this title, shall, solely by reason
> of her or his disability, be excluded from the participation in, be denied
> the benefits of, or be subjected to discrimination under any program
> or activity receiving Federal financial assistance or under any program
> or activity conducted by any Executive agency or by the United States
> Postal Service.

160.    At all times relevant, Defendant MDC has been a recipient of federal financial

assistance bringing Defendant MDC under Section 504 the Rehabilitation Act which prohibits

discrimination against qualified or otherwise qualified individuals in the recipient's "programs or

activities."

161.    The Rehabilitation Act defines "program or activity" to mean all of the operations

of a department, agency, special purpose district, or other instrumentality of State or local

government. Defendants are a state government and/or an agency of a state government. *29 U.S.C. § 794(b)(1)(A)*.

162.    On or around April 26, 2021, after being made aware of the Defendant's decision to have staff return to the office in-person, Ms. Jackson advised the Defendant, through her supervisor Mr. Pino, that she was both the care giver for her terminally ill father, as well as undergoing medical evaluation relating to a concerning colonoscopy.

163.    On or around April 27, 2021, Ms. Jackson again contacted Mr. Pino, having received no response or further guidance. Plaintiff Jackson explained she was suffering from anemia and ongoing nausea. Given her diagnosis and the ongoing evaluation to determine the severity of her disability, Ms. Jackson requested she be permitted as an exception to continue working remotely.

164.    Plaintiff expressed in no uncertain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

165.    On or around that same day, Plaintiff submitted to Defendant MDC documentation, signed by her physician, reflecting that she has been under medical care and requires a procedure on Thursday, September 6, 2021.

166.    Defendant, by and through its employees, failed to respond to Plaintiff's requests for reasonable accommodation.  *See Alboniga v. School Bd. of Broward County Fla,*  87 F.Supp.3d 1319, 1337 (FLSD, 2015), *citing Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa.,* 483 Fed. Appx. 759, 763 (3d Cir. 2012).

167.    Plaintiff participated in a protected activity when she requested and repeatedly renewed her request for a reasonable accommodation despite receiving no response or update. *Ponce v. City of Naples*, No. 2:17-CV-137-FTM-99CM, 2017 WL 2692829 (M.D. Fla. June 22,

2017); *Vargas v. Fla. Crystals Corp.,* No. 16-81399-CIV, 2019 WL 8955114 (S.D. Fla. May 13, 2019); *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000).

168.    Instead, on or around May 10, 2021, Defendant unlawfully terminated Plaintiff in retaliation for her request for reasonable accommodation.

169.    Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests to continue working remote, as well as through the request submitted by her then treating physician.

170.    Instead, on around April 30, 2021, Mr. Pino contacted Ms. Jackson to inquire whether she would be returning to the office. At no time during this call did Mr. Pino indicate that the Defendant MDC had finished its evaluation of Ms. Jackson's accommodating request, denied her accommodation request, and/or that failure to return to the office would be constituted as a resignation.

171.    Defendant MDC failed to engage in any, let alone a meaningful conversation regarding reasonable accommodation.

172.    Instead, On or around May 10, 2021, Defendant unlawfully terminated Plaintiff in retaliation for her request for reasonable accommodation.

173.    Defendant MDC unlawfully retaliated against Ms. Jackson because of that opposition.

174.    The conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under the Rehabilitation Act.

175.    At all times relevant, Ms. Jackson acted in good faith and with the objective and subjective belief that violations of the Rehabilitation Act by Defendant MDC's employees had occurred.

176.    At all times relevant, the unlawful discrimination by Defendant MDC's employees against Ms. Jackson in the terms and conditions of her employment because she opposed a practice made unlawful by the Rehabilitation Act which would not have occurred but for that opposition.

177.    Plaintiff has been damaged by Defendant's illegal conduct.

178.    As a result of Defendant's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

179.    At all times relevant, Defendant MDC, by and through its employees and agents, acted intentionally and with reckless disregard of Ms. Jackson's rights protected by the Rehabilitation Act.

180.    Plaintiff accordingly demands judgment against Defendant MDC in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

181.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by the Rehabilitation Act.

**COUNT SIX**
**29 U.S.C. § 2611**
**FMLA – Interference**

182.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

183.     A covered employer must provide FMLA benefits and protections to eligible employees and comply with their responsibilities under the FMLA and its regulations.

184.     The FMLA provides eligible employees of covered employers with up to 12 workweeks of unpaid, job protected leave in a 12-month period for, specified health and caregiving reasons, including in order to care for a parent of the employee whom suffers from a serious health condition. *See 29 U.S.C. §§ 2612(a)(1)(c)*.

185.     In or around April 2021, Plaintiff had been employed by the Defendant MDC for at least twelve months and had fulfilled more than 1,250 hours of service with the Defendant during that twelve-month period. Accordingly, Plaintiff was an eligible employee under the FMLA. 29 U.S.C. § 2611.

186.     At all times pertinent hereto, Plaintiff's father was suffering from and ultimately succumbed to prostate cancer.

187.     Prior to the pandemic, Plaintiff Jackson was responsible for the health and general caretaking of her elderly father. In fact, Plaintiff was transparent with Ms. Pino about her struggles as his caretaker, requesting time off/schedule adjustments so that she can attend doctors' appointments and other related activities associated with his care.

188.     On or around April 26, 2021, after being made aware of the Defendant's decision to have staff return to the office in-person, Ms. Jackson reminded the Defendant, through her supervisor Mr. Pino, that she was the primary care giver for her terminally ill father, and

requesting the ability to continue to work remotely or be provided an accommodation that would allow for her to provide continued care to her father.

189.    Mr. Pino was aware that Ms. Jackson was responsible for all aspects of her father's care, including transportation and her presence at his doctors appointments and treatment.

190.    On or around April 27, 2021, Ms. Jackson again contacted Mr. Pino, having received no response or further guidance. Plaintiff Jackson explained she was suffering from anemia and ongoing nausea. Given her diagnosis and the ongoing evaluation to determine the severity of her disability, Ms. Jackson requested she be permitted as an exception to continue working remotely.

191.    The Defendant violated the FMLA by interfering with, restraining and/or denying Plaintiffs' rights under the FMLA by, *inter alia*:

   a. Failing to comply with the general notice requirements under the FMLA;
   b. Failing to comply with the eligibility notice requirements under the FMLA;
   c. Failing to comply with the rights and responsibilities notice requirements under the FMLA;
   d. Failing to comply with the designation notice requirements under the FMLA;
   e. Failing to provide notice of a fitness-for-duty certification with the designation notice as required by the FMLA;
   f. Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her duties and return to work at the end of her FMLA leave;
   g. Retaliating against Plaintiff for asking for attempting to exercise her rights under the FMLA;
   h. Failing to provide Plaintiff with the proper FMLA forms and/or medical certifications;
   i. Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;
   j. Failing to have in place proper FMLA policies, procedures and compliance; and/or
   k. Otherwise violating the FMLA.

192.    Despite Ms. Jackson's explanation of her needs relating to the care of her father,

Defendant failed to advise Ms. Jackson of her rights pursuant to the FMLA, including the availability of intermitted leave or extended leave.

193.    The Defendant's violations of the FMLA were grossly negligent and/or willful.

194.    As a direct and proximate cause of Defendant's willful violations of the FMLA, Defendant is liable for Plaintiff's compensation and benefits lost by reason of the above violations, for other actual monetary losses sustained as a direct result of the Defendant's violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff.

195.    As a result of Defendant's intentional retaliatory conduct, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

196.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT SEVEN
### 42 U.S.C. § 1983
**Fourteenth Amendment Equal Protection Clause**

197.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

198.    Section 1 of the Fourteenth Amendment prohibits states, and all public entities deriving therefrom, from depriving persons of "equal protections of the laws," including discrimination and harassment claims by public employees.

199.    A plaintiff may establish liability upon a public entity by showing the entity itself caused the constitutional violation at issue through direct participation by a final policy-make.

200.    Furthermore, a plaintiff may establish entity liability by showing an unofficial custom or practice of the Defendant shown through repeated acts or decision of a state official with final policy-making authority.

201.    Liability attaches under § 1983 where a deliberate choice to follow a course of action is made from among various alternatives.

202.    Plaintiff Jackson had the constitutional right as a public employee to work in an environment free from discrimination.

203.    Defendant MDC knowingly and intentionally discriminated against Plaintiff by failing to accommodate Plaintiff, thereby treating her differently than other comparable employees based on her disability.

204.    At all times material, Plaintiff reported to Mr. Mayte Pino, Defendant MDC's "Director" within the Defendant's Testing and Assessment Department, West Campus.

205.    On or around April 26, 2021, after being made aware of the Defendant's decision to have staff return to the office in-person, Ms. Jackson advised the Defendant, through her supervisor Mr. Pino, that she was both the care giver for her terminally ill father, as well as undergoing medical evaluation relating to a concerning colonoscopy.

206.    On or around April 27, 2021, Ms. Jackson again contacted Mr. Pino, having received no response or further guidance. Plaintiff Jackson explained she was suffering from anemia and ongoing nausea. Given her diagnosis and the ongoing evaluation to determine the severity of her disability, Ms. Jackson requested she be permitted as an exception to continue working remotely.

207.    Plaintiff expressed in no uncertain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

208.    On or around that same day, Plaintiff submitted to Defendant MDC documentation, signed by her physician, reflecting that she has been under medical care and requires a procedure on Thursday, September 6, 2021.

209.    Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests to continue working remote, as well as through the request submitted by her then treating physician.

210.    Defendant, by and through its employees, failed to respond to Plaintiff's requests for reasonable accommodation.

211.    Instead, on around April 30, 2021, Mr. Pino contacted Ms. Jackson to inquire whether she would be returning to the office. At no time during this call did Mr. Pino indicate that the Defendant MDC had finished its evaluation of Ms. Jackson's accommodating request, denied her accommodation request, and/or that failure to return to the office would be constituted as a resignation.

212.    Defendant MDC failed to engage in any, let alone a meaningful conversation regarding reasonable accommodation.

213.    Defendant would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

214.    At all times relevant, Defendant, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide reasonable accommodation or participate in the interactive process.

215.    Instead, on or around May 10, 2021, Defendant unlawfully terminated Plaintiff because of her disability.

216.    Pursuant to state law, as Director of the City of Miami Solid Waste Department, Mr. Nunez is a municipal official with final policymaking authority.

217.    Mr. Pino acted under the color of state law to deliberately deprive Plaintiff of her rights, privileges and immunities secured by the Fourteenth Amendment to the U.S. Constitution and laws of the United States. Specifically, Mr. Pino deprived Plaintiff of her Fourteenth Amendment Equal Protection rights to be free from intentional discrimination because of her disability.

218.    Defendant MDC, by and through its managers and supervisor representatives, acted under color of law to deprive Plaintiff of her rights secured by the 14th Amendment Equal Protection Clause by intentionally discriminating against Plaintiff because of her disability.

219.    The contours of Plaintiff's equal protection rights are clearly established, and sufficiently clear, such that any reasonable state officer would know that treating Plaintiff differently because of her disability would violate Plaintiff's Fourteenth Amendment rights.

220.    The intentional deprivation of Plaintiff's Fourteenth Amendment rights by Defendant MDC was motivated by evil intent, and/or reckless or callous indifference to Plaintiff's federally protected rights.

221.    The Defendant's violations of Plaintiff's Fourteenth Amendment rights were grossly negligent and/or willful.

222.    As a direct and proximate cause of Defendant's willful violations of the Section 1983, Defendant is liable for Plaintiff's compensation and benefits lost by reason of the above violations, for other actual monetary losses sustained as a direct result of the Defendant's

violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff.

223.    As a result of Defendant's intentional retaliatory conduct, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

224.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT EIGHT**
**MDCO 97, Art. IV, Sec. 11A-26(4)**
**Failure to Accommodate (Disability)**

225.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

226.    The MDCO prohibits employers from denying an individual's reasonable accommodations for a disability.

227.    This is an action retaliation violation of MDCO. The MDCO prohibits discrimination against an individual for opposing unlawful acts under the MDCO or for opposing or complaining about disability discrimination.

228.    Ordinance 97-17, Article IV, Sec. 11A-26(1)(d) states:

> "It shall be unlawful for any employer to engage in any practices described below on account of the race, color, religion, ancestry, sex, pregnancy, national origin, age, disability, marital status, familial status, gender identity, gender expression, sexual orientation, or actual or perceived status as a victim of domestic violence, dating violence or stalking of any individual or any person associated with such individual: […] (d) To fail or refuse to make reasonable accommodation for a disabled individual."

229.     Ordinance 97-17, Article IV, Sec. 11A-28(10) provides individuals the right to pursue a private cause of action to enforce Section 11A-26.

230.     The MDCO prohibits discrimination against an individual for opposing unlawful acts under the MDCO or for opposing or complaining about disability discrimination.  *Sec. 11A-26(4)*.

231.     At all times relevant, Plaintiff was "disabled" as defined under the law. Ms. Jackson was suffering from unexplained bleeding in her stool and anemia. As a result, Ms. Jackson was under the ongoing treatment of her physicians, including but not limited to the evaluation of potential cancer risks.

232.     As a result of her disability, Plaintiff was substantially limited in regards to major life functions as well as major bodily functions, including but not limited to digestive and bowl function.

233.     Defendant discriminated against Plaintiff because of her disability by denying her accommodation requests.

234.     On or around April 26, 2021, after being made aware of the Defendant's decision to have staff return to the office in-person, Ms. Jackson advised the Defendant, through her supervisor Mr. Pino, that she was both the care giver for her terminally ill father, as well as undergoing medical evaluation relating to a concerning colonoscopy.

235.     On or around April 27, 2021, Ms. Jackson again contacted Mr. Pino, having received no response or further guidance. Plaintiff Jackson explained she was suffering from anemia and ongoing nausea. Given her diagnosis and the ongoing evaluation to determine the severity of her disability, Ms. Jackson requested she be permitted as an exception to continue working remotely.

236.    Plaintiff expressed in no uncertain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

237.    On or around that same day, Plaintiff submitted to Defendant MDC documentation, signed by her physician, reflecting that she has been under medical care and requires a procedure on Thursday, September 6, 2021.

238.    Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests to continue working remote, as well as through the request submitted by her then treating physician.

239.    Defendant, by and through its employees, failed to respond to Plaintiff's requests for reasonable accommodation.

240.    Instead, on around April 30, 2021, Mr. Pino contacted Ms. Jackson to inquire whether she would be returning to the office. At no time during this call did Mr. Pino indicate that the Defendant MDC had finished its evaluation of Ms. Jackson's accommodating request, denied her accommodation request, and/or that failure to return to the office would be constituted as a resignation.

241.    Defendant MDC failed to engage in any, let alone a meaningful conversation regarding reasonable accommodation.

242.    Defendant would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

243.    At all times relevant, Defendant, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide reasonable accommodation or participate in the interactive process.

244.    Instead, on or around May 10, 2021, Defendant unlawfully terminated Plaintiff because of her disability.

245.    The conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under the MDCO.

246.    Plaintiff has been damaged by Defendant's illegal conduct.

247.    As a result of Defendant's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

248.    At all times relevant, Defendant MDC, by and through its employees and agents, acted intentionally and with reckless disregard of Ms. Jackson's rights protected by Article I of the MDCO.

249.    Plaintiff accordingly demands judgment against Defendant MDC in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

250.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by the MDCO.

**COUNT NINE**
**MDCO 97, Art. IV, Sec. 11A-26(4)**
**Retaliation – Disability**

251.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

252.    This is an action retaliation violation of MDCO. The MDCO prohibits

discrimination against an individual for opposing unlawful acts under the MDCO or for opposing

or complaining about disability discrimination.

253.    Ordinance 97-17, Article IV, Sec. 11A-26(4) states:

> "It shall be unlawful employment practice for any employer to
> discriminate against any of his or her employees or applicants for
> employment, for an employment agency or similar organization to
> discriminate against any individual, or for a labor organization to
> discriminate against any member or applicant for membership
> because he or she has opposed any practice made unlawful by this
> article or because he or she has testified, assisted, or participated in
> any manner in an investigation, proceeding or hearing under this
> article."

254.    Ordinance 97-17, Article IV, Sec. 11A-28(10) provides individuals the right to

pursue a private cause of action to enforce Section 11A-26.

255.    The MDCO prohibits discrimination against an individual for opposing unlawful

acts under the MDCO or for opposing or complaining about discrimination.  *Sec. 11A-26(4)*.

256.    At all times relevant, Plaintiff acted in good faith and with the objective and

subjective belief that violations of the MDCO by Defendants' employees had occurred.

257.    At all times relevant, the unlawful discrimination by Defendants against Plaintiff

in the terms and conditions of her employment occurred because she opposed a practice made

unlawful by Ordinance 97-17, Article IV, Sec. 11A-26(4) which would not have occurred but for

that opposition.

258.     At all times relevant, Defendant MDC employees intended to unlawfully discriminate against Ms. Jackson in their terms and conditions of her employment in violation of the MDCO because she requested an accommodation and subsequently opposed a practice made unlawful by the MDCO.

259.     On or around April 26, 2021, after being made aware of the Defendant's decision to have staff return to the office in-person, Ms. Jackson advised the Defendant, through her supervisor Mr. Pino, that she was both the care giver for her terminally ill father, as well as undergoing medical evaluation relating to a concerning colonoscopy.

260.     On or around April 27, 2021, Ms. Jackson again contacted Mr. Pino, having received no response or further guidance. Plaintiff Jackson explained she was suffering from anemia and ongoing nausea. Given her diagnosis and the ongoing evaluation to determine the severity of her disability, Ms. Jackson requested she be permitted as an exception to continue working remotely.

261.     Plaintiff expressed in no uncertain terms that, provided the accommodation, she would be able to continue performing all the functions of her role.

262.     On or around that same day, Plaintiff submitted to Defendant MDC documentation, signed by her physician, reflecting that she has been under medical care and requires a procedure on Thursday, September 6, 2021.

263.     Plaintiff participated in a protected activity when she requested and repeatedly renewed her request for a reasonable accommodation despite receiving no response or update. *Ponce v. City of Naples*, No. 2:17-CV-137-FTM-99CM, 2017 WL 2692829 (M.D. Fla. June 22, 2017); *Vargas v. Fla. Crystals Corp.,* No. 16-81399-CIV, 2019 WL 8955114 (S.D. Fla. May 13, 2019); *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000).

264.    Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests to continue working remote, as well as through the request submitted by her then treating physician.

265.    Defendant, by and through its employees, failed to respond to Plaintiff's requests for reasonable accommodation.

266.    Instead, on around April 30, 2021, Mr. Pino contacted Ms. Jackson to inquire whether she would be returning to the office. At no time during this call did Mr. Pino indicate that the Defendant MDC had finished its evaluation of Ms. Jackson's accommodating request, denied her accommodation request, and/or that failure to return to the office would be constituted as a resignation.

267.    Instead, On or around May 10, 2021, Defendant unlawfully terminated Plaintiff in retaliation for her request for reasonable accommodation.

268.    And, as a result, Defendant MDC unlawfully retaliated against Ms. Jackson because of that opposition.

269.    At all times relevant, Ms. Jackson acted in good faith and with the objective and subjective belief that violations of the MDCO by Defendant MDC's employees had occurred.

270.    At all times material, Defendant MDC allowed the discriminatory practices to continue in the work environment.

271.    At all times relevant, the unlawful discrimination by Defendant MDC's employees against Ms. Jackson in the terms and conditions of her employment because she opposed a practice made unlawful by the MDCO which would not have occurred but for that opposition.

272.     At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant MDC.

273.     As a direct and proximate result of Defendant MDC's intentional retaliatory conduct in violation of the MDCO, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

274.     At all times relevant, Defendant MDC, by and through its employees and agents, acted intentionally and with reckless disregard of Ms. Jackson's rights protected by the MDCO.

275.     Defendant MDC's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the MDCO, warranting the imposition of punitive damages in addition to compensatory damages.

276.     The conduct of Defendant MDC and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

277.     Plaintiff has been damaged by the illegal conduct of Defendant MDC.

### INJURY AND DAMAGES

278.     As a result of the acts and conduct complained of herein, Plaintiff has experienced severe emotional and physical distress. Furthermore, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses.

## **JURY DEMAND**

Plaintiff Jackson requests a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jackson demands judgment against Defendant MDC in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Miami, Florida 33131                            **DEREK SMITH LAW GROUP, PLLC**
       September 13, 2023

Caroline H. Miller, Esq.
701 Brickell Ave., Suite 1310
Miami, Florida 33131
Tel: (305) 946-1884
Email: Caroline@dereksmithlaw.com

*Counsel for Plaintiff*